UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

---

In Re:                                : Chapter 11
                                      :
THORNTON & CO.,                       : Case No. 15-21416 (AMN)
                                      :
       Debtor                        :
---                                     RE: ECF Nos. 8, 152, and 163

Ruling Sustaining, In Part, the Unsecured Creditors' Committee's
Objection to the Debtor's Motion for Preliminary and Final Orders Authorizing
<u>Use of Cash Collateral and Providing Adequate Protection to Secured Creditors</u>

  An evidentiary hearing on Thornton & Co.'s (the "Debtor") *Motion for Preliminary and Final Orders Authorizing Use of Cash Collateral and Providing Adequate Protection to Secured Creditors* (the "Cash Collateral Motion"), ECF No. 8, the Unsecured Creditors' Committee's (the "Committee") *Objection to Debtor's Motion for Preliminary and Final Orders Authorizing Use of Cash Collateral and Providing Adequate Protection to Secured Creditors* (the "Objection"), ECF No. 152, and the Debtor's *Reply to the Creditors' Committee's Objection to Debtor's Motion for Preliminary and Final Orders Authorizing Use of Cash Collateral and Providing Adequate Protection to Secured Creditors* (the "Reply"), ECF No. 163, was held on September 25, 2015 (the "Hearing"). For the reasons set forth below, the Objection is sustained, in part, and the Debtor's Cash Collateral Motion will be granted, in part, by a separate Order.

Findings of Fact

  The evidence presented at the Hearing established the following:

  1. The Debtor filed a voluntary chapter 11 bankruptcy petition on August 10, 2015 (the "Petition Date"). ECF No. 1.

  2. Pre-petition, the Debtor's business consisted primarily of three activities: (1) the purchase of low-grade plastic resins which it held as inventory in various

warehouses across the country; (2) the sale of that low-grade plastic resin inventory to purchasers as their needs arose; and, (3) railcar direct shipments ("Railcar Direct") in which the Debtor acted as a broker matching buyers and sellers of low-grade plastic resins without ever storing the product as inventory.

3. Post-petition, the Debtor completely ceased purchasing new inventory and is no longer operating as a Railcar Direct broker. *See* Testimony of Jake Thornton, ECF No. 174 at 1:54;[1]  Testimony of Liam Ahearn, ECF No. 174 at 2:50.

4. Additionally, the Debtor has significantly downsized its workforce post-petition, from around 20 employees to less than nine. Testimony of Jake Thornton, ECF No. 174 at 1:21.

5. Since the Petition Date, the Debtor has been collecting outstanding accounts receivable and continuing to sell its inventory as if it were operating as a going concern. *See Budget*, Debtor's Ex. 1. The Debtor is neither selling its inventory nor accepting payment of accounts receivable at below market value. *See Budget Assumptions*, Debtor's Ex. 2;  Testimony of Liam Ahearn, ECF No. 174 at 2:23.

6. Pursuant to its First and Second Interim Consented Cash Collateral Orders (the "Interim Cash Collateral Orders"), ECF Nos. 57 and 129 respectively, the Debtor has been applying the proceeds from its collections and sales, less operating and professional expenses, to pay down the pre-petition secured claim of People's United Bank ("PUB") which holds a security interest in the Debtor's cash collateral.

7. As of the Petition Date, PUB was owed approximately $20,115,000. Proof of Claim # 3-1.

8. Between the Petition Date and September 11, 2015, the Debtor paid PUB approximately $3,358,000.00 on account of its secured claim pursuant to the Interim Cash Collateral Orders. *See* Debtor's Ex. 1.

9. As of September 11, 2015, the Bank was owed approximately $16,757,000.00. *See id.*

10. PUB admits that its secured claim is oversecured and that the payments it has received pursuant to the Interim Cash Collateral Orders have been greater than the amount to which it would be entitled as adequate protection. *See* Statement of Attorney Brendan Recupero, ECF No. 174 at 26:50, 31:11.

11. As of September 11, 2015, the Debtor's assets consisted of $8,173,000.00 pre-petition accounts receivable, $2,847,000.00 post-petition accounts receivables, and $8,442,000.00 in inventory, totaling $19,462,000.00. *See* Debtor's Exs. 1, 2.

12. The Debtor now proposes a cash collateral budget under which it would continue to collect outstanding accounts receivable and sell its remaining inventory while paying its operating and professional expenses. The Debtor also proposes through its cash collateral budget to completely repay all of PUB's remaining $16,757,000.00 pre-petition secured claim by December 25, 2015. *See* Debtor's Ex. 1.

13. By early December 2015, according to the cash collateral budget, the Debtor will have completely sold its inventory and collected all its prepetition accounts receivable. *See* Debtor's Ex. 1; Testimony of Jake Thornton, ECF No. 174 at 2:07.

14. After paying the Bank's pre-petition secured claim in full, the Debtor would be left with approximately $831,000.00 in cash. *See* Debtor's Ex. 1. It is unclear what additional assets the Debtor will own at that time. *See id.*

15. According to the Debtor, paying down PUB's claim in full is intended to demonstrate the fundamental strength of the Debtor's business in order to identify new

---

1 All timestamps refer to the .mp3 file publically available at ECF No. 174 as played on Windows Media Player.

lenders and/or partners to provide funding for a chapter 11 plan.  See Testimony of Liam Ahearn, ECF No. 174 at 2:47.

16. No plan of reorganization has been filed to date.

## Discussion

The Debtor's Cash Collateral Motion proposes a course of action that will liquidate substantially all of the Debtor's assets for the primary purpose of paying PUB's pre-petition secured claim in full.  Although the Debtor's continued sales are not out of the ordinary on a discrete transaction-by-transaction basis (*i.e.*, the Debtor is not selling its inventory at a significant discount, in bulk, or in any other manner that differs significantly from its pre-petition practice), the relevant inquiry under 11 U.S.C. §§ 363(b)(1) and (c)(1) is whether the transactions are in the ordinary *course* of the Debtor's business.  A debtor that is liquidating its major assets for the benefit of a single secured creditor is no longer operating in the ordinary course of business.

Here, the fact that the Debtor had ceased purchasing new inventory and ceased its Railcar Direct business was not disclosed in the Cash Collateral Motion.  The Debtor's revenues from its Railcar Direct business and its inventory sales business are not separately reported in its proposed budget (nor on earlier versions of its budget used in connection with ECF Nos. 57 and 129).  The fact that these substantial portions of the Debtor's business had completely ceased --- leaving the sale of inventory in the absence of new inventory purchases as the Debtor's only business activity --- only became part of the record before the Court when the Committee filed its Objection.

The result is that creditors other than PUB (and now the Committee) have no notice that the Debtor proposes to liquidate substantially all of its assets and pay 100% of PUB's pre-petition secured claim by December 25, 2015.  Allowing the liquidation to

proceed based only on a court order authorizing the use of cash collateral pursuant to § 363(c)(2) --- rather than an order premised on a liquidation out of the ordinary course under § 363(b)(1) --- would amount to a court-sanctioned liquidation without the procedural protections of the chapter 11 plan approval process, or in effect, a *sub rosa* plan.  See, *Motorola v. Comm. Of Unsecured Creditors (In re: Iridium Operating, LLC)*, 478 F. 3d 452, 466 (2nd Cir. 2007).  Given the Debtor's clear intention to liquidate substantially all of its assets in the next 75 days, the Debtor must seek and obtain bankruptcy court authority before continuing its inventory sales pursuant to 11 U.S.C. § 363(b)(1).[2]  See, *Comm. of Equity Security Holders v. Lionel Corp.* (*In re: Lionel Corp.*), 722 F.2d 1063 (2nd Cir. 1983).

Dated at Hartford, Connecticut on October 2, 2015.

*Ann M. Nevins*
United States Bankruptcy Judge
District of Connecticut

---

[2]     The Committee and the Debtor agreed during a telephonic hearing on October 2, 2015, that the Debtor would proceed to fulfill all inventory sales that had been "booked" as of the closed of business on October 2, 2015.