# EXHIBIT B



**PRIVILEGED AND CONFIDENTIAL**

December 4, 2019

Ms. Bonnie Mangan
As **Chapter 7 Trustee of Thornton & Co., Inc.** (Case No. 15-21416 (AMN))
Westview Office Park
1050 Sullivan Suite A3
South Windsor, CT 06074

RE:  Expert Witness and Consultant to Chapter 7 Trustee of Thornton & Co., Inc.

Dear Ms. Mangan:

Thank you for selecting Stout Risius Ross, LLC ("Stout") to provide expert witness and consulting services to you as Chapter 7 Trustee ("You" or "Trustee") of the estate of Thornton & Co., Inc. (the "Estate").  This letter shall confirm the understanding of the Trustee (the "Engagement Letter") concerning the engagement of Stout, the services to be provided by Stout and the manner in which Stout will be compensated for these services.  The engagement is effective as of the date of the Trustee's motion seeking approval of her application to employ Stout (the "Effective Date").

Objectives and Scope

Subject to the Court's approval of Stout's Employment Application, Stout will serve as the Trustee's expert witness and consultant to perform the services described below, as directed by and to the extent applicable in respect of the Trustee's interests, as well as any other services requested by the Trustee.

1. Assist the Trustee evaluating defenses raised by certain parties to adversary proceedings.

2. Assist the Trustee as necessary in the preparation for, and attendance at, any mediation(s) or hearing(s) as they relate to ongoing adversary proceedings.

3. If requested, litigation consulting services and expert witness testimony with respect to certain matters arising in connection with the ongoing adversary proceedings filed in connection with this matter;

4. Provide other financial or business consulting or such other assistance as the Trustee or its counsel may deem necessary, consistent, and non-duplicative with the role of any other forensic accountant or financial advisor in this case.

The Trustee and Stout agree that the Trustee may limit or expand the scope of our representation from time to time on terms mutually acceptable to the parties in writing.

Chapter 7 Trustee of Thornton & Co., Inc.
December 4, 2019
Page 2

John D. Baumgartner and Loretta Cross, or a suitable replacement as determined by Stout and the Trustee jointly, shall be the Managing Directors in charge of the engagement.

Fees and Expenses

In consideration of the services Stout provides to the Trustee pursuant to this Engagement Letter, Stout will seek payment from the Estate.  Stout will submit interim and final fee applications to the court and comply with any orders regarding payments to professionals in this bankruptcy case.  Stout will submit invoices to the Trustee for informational purposes only.

For this engagement, Stout will bill time as incurred on a monthly basis at the following hourly rates, depending on the experience level of each professional.

| Title | Rate Range |
|---|---|
| **Managing Directors** | **$525 to $700** |
| **Directors** | **$435 to $525** |
| **Managers and Senior Managers** | **$300 to $435** |
| **Associates** | **$200 to $300** |

In addition to the fees described above, Stout will seek reimbursement from the Estate for all out-of-pocket expenses reasonably incurred by Stout in connection with the matters contemplated by this Engagement Letter including, without limitation, reasonable fees of counsel.  Out-of-pocket expenses shall include, but not be limited to, technical or engineering professional fees, all reasonable travel expenses, duplicating charges (including graphic design charges), on-line service charges (including data room charges), messenger and delivery services, meeting services and long-distance telephone and facsimile charges incurred by Stout.

In the event there is a conflict or inconsistency between this letter and the attached professional terms, the letter will govern.



Chapter 7 Trustee of Thornton & Co., Inc.
December 4, 2019
Page 3

All payments required hereunder shall be paid by check unless otherwise permitted by us.

<u>Through USPS:</u>
Stout Risius Ross, LLC
P.O. Box 71770
Chicago, IL 60694-1770

<u>Through courier packages (e.g., Fed Ex, UPS):</u>
Xerox c/o BMO Harris
LBX 71770
141 W. Jackson Blvd, Suite 1000
Chicago, IL 60604

<u>Bankruptcy Court</u>

The Trustee, as soon as practicable following the execution of this Engagement Letter by the Trustee, shall seek an order authorizing the employment of Stout pursuant to the terms of this Engagement Letter, as a professional person pursuant to (and subject to the standard of review of) Section 328(a) and Section 1103 of the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders.  The Trustee shall use her best efforts to cause such application to be considered promptly.  The employment application and the order authorizing employment of Stout shall be provided to Stout sufficiently in advance of their filing, and must be acceptable to Stout in its discretion.  If the order authorizing the employment of Stout is obtained, Stout will apply for allowance of compensation and reimbursement of expenses for our advisory services.  Stout's applications will be in accordance with any orders entered in the Chapter 11 or 7 cases regarding reimbursement of professionals, Section 330 of the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders, and the Committee will work with Stout to promptly file any and all necessary applications regarding such fees and expenses with the Bankruptcy Court.  If the order authorizing the employment of Stout is not obtained (or is later reversed or set aside for any reason), Stout may terminate this Engagement Letter and Stout may apply to the Court for all fees and expenses reasonably incurred prior to the date of termination, subject to the requirements of the Bankruptcy Code, Bankruptcy Rules and applicable local rules and orders.  The terms of this paragraph are solely for the benefit of Stout and may be waived, in whole or in part, only by Stout.

Chapter 7 Trustee of Thornton & Co., Inc.
December 4, 2019
Page 4

### Term of Engagement

This Engagement Letter shall extend for the duration of the above-referenced bankruptcy case unless earlier terminated upon thirty (30) days' written notice by the Trustee. Early termination of this Engagement Letter shall not affect (a) the confidentiality provisions set forth herein; and (b) Stout's right to receive, and the Trustee's obligation to pay, any and all court-approved fees and expenses accrued as of the effective date of termination of this Engagement Letter.

### Entire Agreement, Waiver, Modification, and Notices

This Engagement Letter, including any Exhibits, constitutes the final and complete expression of the parties with respect to its subject matter and supersedes and replaces any other written or oral agreement or understanding between the parties. This Engagement Letter may be amended, modified, supplemented or waived only by a written instrument signed by both parties. No waiver of a breach hereof shall be deemed to constitute a waiver of a future breach, whether of a similar or a dissimilar nature. All notices, demands or other communications which are required or are permitted to be given in this Agreement shall be in writing and shall be deemed to have been sufficiently given (i) upon personal delivery, (ii) the third business day following due deposit in the U.S. mail, postage prepaid, and sent certified mail, return receipt requested, correctly addressed or (iii) when receipt is acknowledged if sent via facsimile transmission. Notices to you shall be sent to the address set forth on page one of this Engagement Letter with a copy to Committee counsel.

To the extent of any inconsistency between the terms of this Engagement Letter (including the attached Professional Terms), and any Order of the Bankruptcy Court, the Order of the Bankruptcy Court authorizing our employment shall govern.

\* \* \* \* \*

Chapter 7 Trustee of Thornton & Co., Inc.
December 4, 2019
Page 5

Please indicate your agreement with the terms of this letter (including the Professional Terms), subject to approval of the Bankruptcy Court, by signing and returning to me the enclosed copy of this letter. We appreciate the opportunity to be of service to you and look forward to working with you on this important project. Please note that this offer will terminate 60 days from the date of this letter, and shall be of no further force or effect unless expressly reinstated by us.

Very truly yours,

**STOUT RISIUS ROSS, LLC**

By: _/s/ John W Baumgart_____

Attachments: Professional Terms

Acknowledged and Accepted:

**Chapter 7 Trustee of Thornton & Co., Inc.**

Signed: _____

Name: _____

**Green & Sklarz, LLC (as counsel to Chapter 7 Trustee)**

Signed: _____

Name: _____

Chapter 7 Trustee of Thornton & Co., Inc.
December 4, 2019
Page 6

# STOUT RISIUS ROSS, LLC PROFESSIONAL TERMS

**1. Our Services**  We will provide the services as described in our engagement letter, as may be modified from time to time by mutual consent.

**2.   Independent Contractor**  We are an independent contractor and not your employee, agent, joint venturer or partner, and will determine the method, details and means of performing our services.  We assume full and sole responsibility for the payment of all compensation and expenses of our employees and for all of their state and federal income tax, unemployment insurance, Social Security, disability insurance and other applicable employee withholdings.

**3.  Fees and Expenses**  Our fees, out-of-pocket expenses, and payment terms are set out in our engagement letter.  Those fees do not include taxes.  You will be responsible for and pay all applicable sales, use, excise, value added and other taxes associated with the provision or receipt of the services, excluding taxes on our income generally.

**4. Confidentiality**  With respect to any information supplied in connection with this engagement and designated by any party as confidential, or which the other party(s) should reasonably believe is confidential based on its subject matter or the circumstances of its disclosure, the other party(s) agree to protect the confidential information in a reasonable and appropriate manner, and use confidential information only to perform its obligations under this engagement and for no other purpose.  This will not apply to information which is: (i) publicly known, (ii) already known to the recipient, (iii) disclosed by a third party without restriction, (iv) independently developed, or (v) disclosed pursuant to legal requirement or order.  Following the completion of our engagement, but not before such time, we may mention the name of the Company and/or use the Company logo and provide a general description of the engagement in our printed or electronic materials, or in our marketing presentations to others.

We are not to be characterized as an "expert" for purposes of securities law and we are not to be referred to, either by name or inference, in any public (e.g., S-1) or nonpublic security filing or private placement.  (Any such disclosure document is defined herein as a "Filing".)  Moreover, we are not obligated to provide, nor will we provide, any consent to be named in any such Filing either during the performance of our services or after the conclusion of our engagement.

**5.   Use of Financial & Other Information / GAAS**  In the course of our engagement, we will use financial and other information, including prospective financial information, obtained from you, the Company, and/or your representatives, and other public and private sources.  The scope of our work will not enable us to accept responsibility for the accuracy and completeness of such information, and it is understood that we will have no duty of independent investigation or verification of such information.  While our work may involve analysis of various records, our engagement does not include an examination in accordance with generally accepted auditing standards known as "GAAS."  Furthermore, we will take no responsibility for the achievability of any expected, forecasted, projected, or hypothetical results anticipated or assumed by the management of the Company, whether relied upon by us or not.

**6.   Our Work Product and Your License**  Upon full payment of all amounts due us in connection with this engagement, the work product prepared by us for you in connection with our services will become your property, except as set forth below.  Our work papers will not constitute work product and will remain our sole and exclusive property.  We will retain sole and exclusive ownership of all right, title and interest in our proprietary information which will not constitute work product, including such information as existed prior to the delivery of our services and, to the extent such information is of general application, anything which we may discover, create or develop during our provision of services for you.  To the extent our deliverables to you contain our proprietary information, we grant you a non-exclusive, non-assignable, royalty-free license to use the proprietary information provided by us in the work product and the subject of the engagement and for no other or further use without our express, prior written consent.

**7.   Our Warranty**  We warrant that our services will be performed with reasonable care in a diligent and competent manner.  Our sole obligation will be to correct any non-conformance with this warranty, provided that you give us written notice within 60 days after the services are performed or, if applicable, deliverables are delivered.  The notice will specify and detail the non-conformance and, if you and we agree that a non-conformance exists, we will have a reasonable amount of time, based on its severity and complexity, to correct the non-conformance.

We do not warrant and are not responsible for any third party products or services.  Your sole and exclusive rights and remedies with respect to any third party products or services are against the third party vendor and not against us.

THIS WARRANTY IS OUR ONLY WARRANTY CONCERNING THE SERVICES AND ANY DELIVERABLE, AND IS MADE EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES AND REPRESENTATIONS, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY, NON-INFRINGEMENT, OR FITNESS FOR A PARTICULAR PURPOSE, OR OTHERWISE.

**8. Response to Subpoena**  In the event we are required to respond to a subpoena (e.g., producing documents in our possession, providing testimony, cooperating with your legal

Chapter 7 Trustee of Thornton & Co., Inc.
December 4, 2019
Page 7

counsel, etc.) related to this engagement (regardless of whether such subpoena is served during or subsequent to the completion of our work), we will invoice you at our standard hourly rates applicable at the time such services are rendered.  We will also invoice you for our related out-of-pocket expenses, including, but not limited to, copying charges, courier fees, travel expenses and attorney fees.

**9.  Non-Solicitation**  During the term of this engagement, and for a period of one year following its expiration or termination, you will not actively solicit, employ or otherwise engage any of our employees (including former employees) who were involved directly in the engagement.

**10.    Termination**   (a) Any party may terminate our engagement at any time upon 10 days written notice.

(b)       Stout Risius Ross, LLC may suspend or terminate this engagement immediately and without notice in the event of non-payment of amounts due us.

(c)       You will pay us for all services rendered, expenses incurred or commitments made by us to the effective date of termination, and will reimburse us for all reasonable costs associated with any termination.

**11.   Our Financial Interest / Compensation**  None of our employees who will work on this engagement have any known financial interest in the Company or the outcome of our analysis, and our compensation is neither based upon nor contingent upon the conclusions we reach.  We do not warrant or predict results or final developments in this matter.

**14.   Staffing**   While we will attempt to comply with your requests for specific individuals, we retain the right to assign and reassign our personnel, as appropriate, to perform the services.

**15.  General**  (a) These Professional Terms, together with the engagement letter, including all its attachments, constitute the entire understanding and agreement between us with respect to the services and deliverables described in the engagement letter, supersede all prior oral and written communications between us, and may be amended, modified or changed only in writing when signed by all parties.  If there is a conflict between these Professional Terms and the terms of the engagement letter, these Professional Terms will govern.

(b)       No term of this agreement will be deemed waived, and no breach of this agreement excused, unless the waiver or consent is in writing signed by the party granting such waiver or consent.

(c)       The terms of this agreement which by their nature are to survive this agreement will survive its expiration or termination.

(d)       We will retain files related to this engagement in accordance with our document retention policy.

(e)       We each acknowledge that we may correspond or convey documentation via Internet e-mail and that none of the parties has control over the performance, reliability, availability, or security of Internet e-mail.  Therefore, none of the parties will be liable for any loss, damage, expense, harm or inconvenience resulting from the loss, delay, interception, corruption, or alteration of any Internet e-mail due to any reason beyond our reasonable control.

(f)       All of our respective rights and duties and all controversies and claims in connection with this engagement will be determined in accordance with the laws of the State of Texas.

\* \* \* \* \* \*